UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
AHARON BLACHORSKY,

                                        Plaintiff,

              -against-

MARTIN O'MALLEY, *in his capacity as*
*Commissioner of the Social Security Administration*,[1]

                                        Defendant.
----------------------------------------------------------------X

**23-CV-07401 (VF)**

**<u>OPINION AND ORDER</u>**

**VALERIE FIGUEREDO, United States Magistrate Judge.**

Plaintiff Aharon Blachorsky seeks judicial review of a final determination by the

Commissioner ("Commissioner" or "Defendant") of the Social Security Administration ("SSA"),

denying Blachorsky's application for Supplemental Security Income Benefits under Title XVI of

the Social Security Act (the "Act"). Before the Court is Blachorsky's motion for a remand for

further administrative proceedings pursuant to 42 U.S.C. § 405(g). <u>See</u> ECF Nos. 12-13. For the

reasons set forth below, Blachorsky's motion is **DENIED**.

---

[1] When this action commenced Kilolo Kijakazi was Acting Commissioner of the Social
Security Administration. Martin O'Malley became the Commissioner of the Social Security
Administration on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil
Procedure, Martin O'Malley is substituted as the defendant in this suit. <u>See</u> Fed. R. Civ. P. 25(d)
(permitting automatic substitution of a party who is a public official sued in their official
capacity when the public official "ceases to hold office" while a suit is pending).

# BACKGROUND

### A. Procedural History

On January 26, 2021, Blachorsky filed his application for Supplemental Security Income benefits ("SSI"), alleging June 1, 2015, as the onset date of his disability. See ECF No. 9 (SSA Administrative Record ("R.")) at 22. Blachorsky later amended his alleged onset date to March 15, 2018. Id. Blachorsky applied for SSI benefits, alleging disability based on the following conditions: chronic kidney disease, obesity, Crohn's disease, bilateral knee arthritis, obstructive sleep apnea, cataracts, maculopathy, cervical degenerative disc disease, cellulitus, and diabetic ulcers. Id. at 24.

Blachorsky's claim for SSI was initially denied on May 4, 2021, and was denied upon reconsideration on September 3, 2021. Id. at 22. On September 27, 2021, Blachorsky filed a written request for a hearing before an administrative law judge. Id.

On February 3, 2022, Blachorsky and his counsel, Dennis Kenny, appeared at a telephonic hearing before Administrative Law Judge ("ALJ") Michael J. Stacchini. Id. On March 17, 2022, the ALJ issued a written decision, finding that Blachorsky had not been under a disability within the meaning of the Act from June 1, 2015, through the date of the decision. Id. at 23. Blachorsky requested that the SSA Appeals Council review the ALJ's decision, and on June 23, 2023, the Appeals Council issued a final decision affirming the ALJ's determination. Id. at 5-13.

On August 21, 2023, Blachorsky commenced this action seeking review of the administrative determination. See ECF No. 1 ("Compl."). On October 23, 2023, the Commissioner filed the Administrative Record, which constituted his answer. ECF No. 9. Thereafter, on December 22, 2023, Blachorsky moved for judgment on the pleadings and

submitted a memorandum of law in support of his motion, requesting that the Court remand for further administrative proceedings pursuant to 42 U.S.C. § 405(g). ECF Nos. 12, 13. On February 16, 2024, the Commissioner submitted his brief in opposition. ECF No. 15.[2] Blachorsky filed his reply brief on March 11, 2024. ECF No. 16.

### B. Medical Evidence

The parties' memoranda provide summaries of the medical evidence contained in the administrative record. See ECF No. 13 ("Pl's Br.") at 12-20; ECF No. 15 ("Def's Br.") at 9-17. Having examined the record, the Court concludes that the parties have accurately stated its contents. The Court therefore adopts the parties' summaries as complete for purposes of the issues raised in this action. See Collado v. Kijakazi, No. 20-CV-11112 (JLC), 2022 WL 1960612, at *2 (S.D.N.Y. June 6, 2022) (adopting parties' summaries of medical evidence where parties did not dispute recitation of relevant facts); Scully v. Berryhill, 282 F. Supp. 3d 628, 631-32 (S.D.N.Y. 2017) (adopting parties' summaries where they were "substantially consistent with each other" and neither party objected to the opposing party's summary). The medical evidence in the record is discussed herein to the extent necessary to address the issues raised in the pending motion.

## DISCUSSION

### A. Legal Standards

#### 1. Judgment on the Pleadings

A Rule 12(c) motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922

---

[2] The Commissioner's response is in the form of a brief, pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) and Standing Order No. 22-mc-329-LTS. See ECF No. 15 at 1, n.2.

(2d Cir. 2010). Thus, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotation marks and citation omitted).

2. Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the Commissioner "in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g). A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) (The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

Substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 407 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 374-75; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (citation and internal quotation marks omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations … whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Id. (citation omitted). In weighing whether substantial evidence exists to support the Commissioner's decision, "the reviewing court is

required to examine the entire record, including contradictory evidence and evidence from which

conflicting inferences can be drawn." Selian, 708 F.3d at 417 (quoting Mongeur v. Heckler, 722

F.3d 1033, 1038 (2d Cir. 1983) (per curiam)).

The substantial evidence standard is a "very deferential standard of review." Brault v.

Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012). The Court "must be careful not to

substitute its own judgment for that of the Commissioner, even if it might justifiably have

reached a different result upon a *de novo* review." DeJesus v. Astrue, 762 F. Supp. 2d 673, 683

(S.D.N.Y. 2011) (quoting Jones v. Sullivan, 949 F.3d 57, 59 (2d Cir. 1991)) (internal quotation

marks and alterations omitted). "[O]nce an ALJ finds facts, [a court] can reject those facts 'only

if a reasonable factfinder would have to conclude otherwise.'" Brault, 83 F.3d at 3448 (quoting

Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted). "Even where the

administrative record may also adequately support contrary findings on particular issues, the

ALJ's factual findings must be given conclusive effect so long as they are supported by

substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and

internal quotation marks omitted); see also Johnson v. Astrue, 563 F. Supp. 3d 444, 454

(S.D.N.Y. 2008).

3.  Commissioner's Determination of Disability

The Social Security Act defines the term "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see id.

§ 1382c(a)(3)(A). Physical or mental impairments must be "of such severity that [the claimant] is

not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); see id. § 1382c(a)(3)(B). In assessing a claimant's impairments and determining whether they meet the statutory definition of disability, the Commissioner "must make a thorough inquiry into the claimant's condition and must be mindful that 'the Social Security Act is a remedial statute, to be broadly construed and liberally applied.'" Mongeur, 722 F.3d at 1037 (quoting Gold v. Sec'y of H.E.W., 463 F.3d 38, 41 (2d Cir. 1972)). The Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Id. (citations omitted); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

### 4. Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential evaluation process' to determine whether a claimant is disabled[.]" Estrella v. Berryhill, 925 F.3d 90, 94 (2d Cir. 2019) (citations omitted); 20 C.F.R. § 416.920(a)(4). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). Second, if the claimant is unemployed, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment, C.F.R. § 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. § 416.920(c). Third, if the claimant has such an impairment, the Commissioner considers whether the medical severity of the impairment "meets or equals" a listing in 20 C.F.R. Part 404, Subpart P,

Appendix 1. See id. §§ 416.920(a)(4)(iii), 416.920 (d). If so, the claimant is considered disabled. Id.

If the claimant alleges a mental impairment, the Commissioner must apply a "special technique" to determine the severity of the claimant's impairment at step two, and to determine whether the impairment satisfies Social Security regulations at step three. See 20 C.F.R. § 416.920a; see also Kohler v. Astrue, 546 F.3d 260, 265 (2d. Cir. 2008). "If the claimant is found to have a 'medically determinable mental impairment,' the [Commissioner] must 'specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s),' then 'rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of [Section 416.920a],' which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation." Velasquez v. Kijakazi, No. 19-CV-9303 (DF), 2021 WL 4392986, at *18 (S.D.N.Y. Sept. 24, 2021) (quoting 20 C.F.R. §§ 416.920a(b), (c)(3)). "The functional limitations for these first three areas are rated on a five-point scale of none, mild, moderate, marked, or extreme, and the limitation in the fourth area (episodes of decompensation) is rated on a four-point scale of none, one, or two, three, or four or more." Id. (internal quotations, alterations, and citations omitted).

Fourth, if the claimant's impairment does not meet or equal a listed impairment, the Commissioner continues to the fourth step and determines whether the claimant has the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. § 416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and

work experience, permits the claimant to do other work. Id. § 416.920(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. Id. § 416.920(a)(4)(v).

The claimant has the burden at the first four steps. Burgess, 537 F.3d at 128. If the claimant is successful, the burden shifts to the Commissioner at the fifth and final step, where the Commissioner must establish that the claimant has the ability to perform some work in the national economy. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

5. Evaluation of Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." Pena ex rel. E.R. v. Astrue, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)) (internal quotation marks omitted). For SSI applications filed before March 27, 2017, the SSA's regulations required application of the "treating physician rule," which required an ALJ to give more weight to the opinions of physicians with the most significant relationship with the claimant. See 20 C.F.R. § 416.927(d)(2); see also Taylor v. Barnhart, 117 F. App'x 139, 140-41 (2d Cir. 2004). Under the treating physician rule, an ALJ was required to provide her reasoning if she determined that a treating physician's opinion was not entitled to "controlling weight," or at least "more weight," than the opinions of non-treating and non-examining sources. Gonzalez v. Apfel, 113 F. Supp. 2d 580, 588 (S.D.N.Y. 2000). In addition, under the treating physician rule, a consultative physician's opinion was generally entitled to "little weight." Giddings v. Astrue, 333 F. App'x 649, 652 (2d Cir. 2009).

On January 18, 2017, the SSA published comprehensive revisions to the regulations regarding the evaluation of medical evidence for applications filed on or after March 27, 2017 (such as Blachorsky's application in this case). See Revisions to the Rules Regarding the

Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5869-70, 2017 WL 168819 (Jan. 18, 2017).

"In implementing new regulations, the SSA has apparently sought to move away from a

perceived hierarchy of medical sources." Velasquez, 2021 WL 4392986, at *19 (citing 82 Fed.

Reg. 5844). The new regulations state that an ALJ need "not defer or give any specific

evidentiary weight, including controlling weight, to any medical opinion(s) or prior

administrative medical finding(s) including those from [a claimant's] medical sources."[3] 20

C.F.R. §§ 404.1520c(a), 416.920c(a); see also Young v. Kijakazi, No. 20-CV-3606 (SDA), 2021

WL 4148733, at *9 (S.D.N.Y. Sept. 13, 2021). Instead, an ALJ must consider all medical

opinions in the record and "evaluate the persuasiveness" based on five "factors": (1)

supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) any

"other" factor that "tend[s] to support or contradict a medical opinion." Id. §§ 404.1520c(c),

416.920c(c).

Notwithstanding the requirement to "consider" all of these factors, the ALJ's duty to

articulate a rationale for each factor varies. 20 C.F.R. §§ 404.1520c(a)-(b), 416.1520c(a)-(b).

Under the new regulations, the ALJ must "explain," in all cases, "how [she] considered" both the

supportability and consistency factors, as they are "the most important factors." Id. §§

404.1420c(b)(2), 416.920c(b)(2); see also Young, 2021 WL 4148733, at *9 (describing

supportability and consistency as "the most important" of the five factors); Amber H. v. Saul,

---

[3] The new regulations define "prior administrative medical finding" as: a "finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, including but not limited to: (i) The existence and severity of your impairment(s); (ii) The existence and severity of your symptoms; (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; (iv) If you are an adult, your [RFC]; (v) Whether your impairment(s) meets the duration requirement; and (vi) How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim." 20 C.F.R. § 416.913(a)(5).

No. 3:20-CV-490 (ATB), 2021 WL 2076219, at *4 (N.D.N.Y. May 24, 2021) (noting that the two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," the "same factors" that formed the foundation of the treating physician rule). With respect to the supportability factor, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." Vellone on behalf of Vellone v. Saul, No. 20-CV-261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), report and recommendation adopted by, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920(c)(1)); see Rivera v. Comm'r of Soc. Sec. Admin., No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at *16 (S.D.N.Y. Dec. 30, 2020), report and recommendation adopted by, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (noting that supportability "has to do with the fit between the medical opinion offered by the source and the underlying evidence and explanations 'presented' by that source to support [his or] her opinion") (quoting 20 C.F.R. § 416.920c(c)(1)). Consistency, on the other hand, "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." Vellone, 2021 WL 319354, at *6 (citing 20 C.F.R. § 416.920c(c)(2)).

As to the three remaining factors—relationship with the claimant, specialization, and "other" —the ALJ is required to consider, but need not explicitly discuss, them in determining the persuasiveness of the opinion of a medical source. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). If the ALJ finds two or more medical opinions to be equally supported and consistent with the record, but not identical, the ALJ must articulate how she considered the three remaining factors. See id. §§ 404.1520c(b)(3), 416.920c(b)(3). Thus, "[a]lthough the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical

opinions, and assigning 'weight' to a medication opinion, the ALJ must still 'articulate how [she] considered the medical opinions and how persuasive [she] find[s] all of the medical opinions.'" Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (citations omitted). "If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases [his] explanation upon a misreading of the record, remand is required." Rivera, 2020 WL 8167136, at *14 (quoting Andrew G., 2020 WL 5848776, at *9).

Courts considering the application of the new regulations have concluded that "the factors are very similar to the analysis under the old [treating physician] rule." Velasquez, 2021 WL 4392986, at *20 (quoting Dany Z. v. Saul, 531 F. Supp. 3d 871, 885 (D. Vt. 2021)); see also, Acosta Cuevas v. Comm'r of Soc. Sec., No. 20-CV-502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021), report and recommendation adopted by, 2022 WL 717612 (Mar. 10, 2022) (collecting cases considering the new regulations and concluding that "the essence" of the treating physician rule "remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar"). "This is not surprising considering that, under the old rule, an ALJ had to determine whether a treating physician's opinion was *supported* by well-accepted medical evidence and *not inconsistent* with the rest of the record before controlling weight could be assigned." Acosta Cuevas, 2021 WL 363682, at *9 (emphasis included); see also e.g., Andrew G., 2020 WL 5848776, at *5 (noting that "consistency and supportability" were the foundation of the treating physician rule).

6. Claimant's Credibility

An ALJ's credibility finding as to the claimant's disability is entitled to deference by the reviewing court. Osorio v. Barnhart, No. 4-CV-7515 (DLC), 2006 WL 1464193, at *6 (S.D.N.Y.

May 30, 2006). "[A]s with any finding of fact, '[i]f the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints.'" Id. (quoting Aponte v. Sec'y of Health and Hum. Servs., 728 F.2d 588, 591 (2d Cir. 1984)) (first alteration in original). Still, an ALJ's finding of credibility "must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." Pena v. Astrue, No. 07-CV-11099 (GWG), 2008 WL 5111317, at *10 (S.D.N.Y. Dec. 3, 2008) (quoting Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988)). "The ALJ must make this [credibility] determination 'in light of the objective medical evidence and other evidence regarding the true extent of the alleged symptoms.'" Id. (quoting Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984)).

SSA regulations provide that statements of subjective pain and other symptoms alone cannot establish a disability. Genier, 606 F.3d at 49 (2d Cir. 2010). The ALJ must follow a two-step framework for evaluating allegations of pain and other limitations. Id. First, the ALJ considers whether the claimant suffers from a "medically determinable impairment that could reasonably be expected to produce" the symptoms alleged. Id.; see also 20 C.F.R. § 416.929(a). Among the kinds of evidence that the ALJ must consider (in addition to objective medical evidence) are:

> 1. The individual's daily activities; 2. [t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. [f]actors that precipitate and aggravate the symptoms; 4. [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. [t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. [a]ny measures other than treatment the individual uses or has used to relief pain or other symptoms (*e.g.* lying flat on his back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. [a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Pena, 2008 WL 5111317, at *11 (citing Social Security Ruling ("SSR") 96-7p, 1996 WL

374186, at *3 (SSA July 2, 1996)).

**B.  <u>The ALJ's Decision</u>**

On March 17, 2022, the ALJ issued his decision, R. at 19-39, finding that Blachorsky was

not disabled under the Act. <u>Id.</u> at 19. The ALJ began by explaining the five-step process for

determining whether an individual is disabled. <u>Id.</u> at 23-24. At step one, the ALJ found that

Blachorsky met the insured status requirements of the Social Security Act through December 31,

2019, and had not engaged in substantial gainful activity since March 15, 2018. <u>Id.</u> at 24.

At step two, the ALJ found that Blachorsky had ten impairments which significantly

limited his ability to perform basic work activities: (1) chronic kidney disease; (2) obesity; (3)

Crohn's disease; (4) bilateral knee arthritis; (5) obstructive sleep apnea; (6) cataracts; (7)

maculopathy; (8) cervical degenerative disc disease; (9) cellulitis; and (10) diabetic ulcers. <u>Id.</u>

At step three, the ALJ found that Blachorsky did not have an impairment or combination

of impairments that met the severity of one of the listed impairments in 20 C.F.R. Subpart P,

Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526). <u>Id.</u> at 25-27. The ALJ assessed

Blachorsky's Crohn's disease and found that there was not "sufficient evidence that the

claimant's [albumin] levels met the requirements" of Listing 5.06 for inflammatory bowel

disease. <u>Id.</u> at 27. The ALJ found that Blachorsky's kidney issues did not satisfy Listing 6.05 for

chronic kidney disease, as he did not have the required creatine levels to satisfy the requirements

of the Listing. <u>Id.</u> The ALJ also concluded that Blachorsky's ulcers did not meet the

requirements of Listing 5.08 for weight loss due to any digestive disorder. <u>Id.</u> Last, the ALJ

found that Blachorsky's vision issues did not satisfy the requirements of Listing 2.02. <u>Id.</u> The

ALJ considered Blachorsky's obesity in combination with his other impairments. <u>Id.</u> at 25, 27.

The ALJ found that Blachorsky had the residual functional capacity "to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a)." Id. at 27. The ALJ determined that Blachorsky could occasionally push, pull or use foot controls; could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; could perform work that avoids unprotected heights and hazardous machinery; and could perform work "where he is permitted ready access to [the] bathroom for 5% of [the] work period in addition to" regularly scheduled breaks of 15 minutes in the morning and afternoon, and a half-hour to an hour midday. Id.

In considering Blachorsky's symptoms, the ALJ followed the established two-step process: (1) determining whether there was an underlying medically determinable physical or mental impairment; and (2) if such an impairment was shown, evaluating the "intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." Id. at 28. The ALJ found that Blachorsky's conditions imposed restrictions, but "not to the degree alleged" by Blachorsky. Id. The ALJ determined that Blachorsky's conditions left him unable to perform his past relevant work as a store owner. Id. at 32. The ALJ considered Blachorsky's "age, education, work experience and [RFC]" and found that Blachorsky would be able to perform work as a: (1) customer complaint clerk (DOT 241.367-014); (2) order filler (DOT 249.362-014); or (3) telephone solicitor (DOT 299.357-014). Id. at 33. Accordingly, the ALJ concluded that Blachorsky "has not been under a disability" within the meaning of the Act "from March 15, 2018, the amended alleged onset date, through the date of this decision." Id. at 37 (citing 20 C.F.R. §§ 404.1420(g), 416.920(g)).

## C. **Analysis**

Blachorsky attacks the ALJ's determination on several grounds. First, Blachorsky contends that the ALJ did not fulfill his duty to adequately develop the record, because he did not

seek out a medical opinion from one of Blachorsky's treating physicians and improperly relied

on the "stale" medical opinion of Dr. Michael Healy, which did not consider medical records

subsequent to April 12, 2021, that showed that Blachorsky's condition had deteriorated. Pl's Br.

at 18-21. Second, Blachorsky argues that the ALJ's determination is not supported by substantial

evidence, particularly as it relates to the ALJ's consideration of Blachorsky's Crohn's disease,

foot ulcers, open abdominal wound, and obesity. Id. at 17-18, 22-23. Last, Blachorsky argues

that the ALJ did not give sufficient weight to his hearing testimony and erred in not finding it

highly credible, as it concerned the limitations Blachorsky testified to experiencing as a result of

his various conditions. Id. at 16-18. As discussed below, each of these arguments is meritless and

the ALJ's RFC determination is supported by substantial evidence.

    1.   The ALJ discharged his duty to develop the record.

       In social security proceedings, the ALJ must affirmatively develop the record on behalf

of all claimants. See Moran v. Astrue, 569 F.3d 108, 112-13 (2d Cir. 2009). This means that the

ALJ must investigate the facts and develop the arguments both for and against granting benefits.

Id. The record must be "complete and detailed enough to allow the ALJ to determine the

claimant's residual functional capacity." Pinkney v. Berryhill, No. 17-CV-8184 (ALC), 2019

WL 1434456, at *8 (S.D.N.Y. Mar. 29, 2019) (quoting Roman v. Colvin, No. 15-CV-4800

(LGS) (JCF), 2016 WL 4990260, at *7 (S.D.N.Y. Aug. 2, 2016), report and recommendation

adopted by, 2016 WL 4919960 (S.D.N.Y. Sept. 14, 2016)). Whether the ALJ has discharged this

duty is a threshold question that must be addressed by the reviewing court before deciding

whether the Commissioner's final decision is supported by substantial evidence pursuant to 42

U.S.C. § 405(g). See Scott v. Astrue, No. 09-CV-3999 (KAM) (RLM), 2010 WL 2736879, at

*12 (E.D.N.Y. July 9, 2010). Remand is appropriate when the ALJ fails to discharge this duty.

See Moran, 569 F.3d at 114-15 ("We vacate not because the ALJ's decision was not supported

by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").

Contrary to Blachorsky's argument, the record before the ALJ was sufficient for him to make an RFC determination and the ALJ was not required to obtain any additional medical opinions. First, the ALJ had access to the medical opinion of Dr. Michael Healy, a consultative examiner who examined Blachorsky on April 12, 2021. R. at 29, 770. At that examination, Dr. Healy was able to interview and observe Blachorsky, perform a knee X-Ray, and test Blachorsky's motor ability. Id. at 770-73. Dr. Healy diagnosed Blachorsky with morbid obesity, hypertension, bilateral knee pain, Crohn's disease, diabetes, and kidney disease. Id. at 773. Dr. Healy also found that Blachorsky was "stable" and that he had only "moderate limitations sitting, standing, walking, bending, lifting, and climbing stairs." Id. The ALJ found that Dr. Healy's opinion, when taken together with Blachorsky's testimony as to his activities of daily living, other medical records, and course of treatment for his conditions, supported a finding that, at a minimum, Blachorsky could engage in sedentary work. Id. at 32.

In addition to the opinion of Dr. Healy, the ALJ also reviewed two prior administrative medical findings from state agency examiners, one from Dr. D. Chen dated April 28, 2021, and another from Dr. M. Kirsch dated August 27, 2021. Id. at 31-32 (citing id. at 73-86, 102-16). Although neither physician examined Blachorsky, they reviewed Dr. Healy's opinion and all of Blachorsky's relevant medical records. Id. at 31-32. Both physicians found that Blachorsky suffered from "severe" obesity and joint dysfunction, and "non-severe" inflammatory bowel disease, diabetes, hypertension, hyperlipidemia, and chronic kidney disease. Id. at 79, 109. Neither found that Blachorsky was disabled. Id. at 85, 115.

Dr. Chen found that Blachorsky was capable of frequently lifting light objects, id. at 81, and that Blachorsky was capable of light work, such as his previous employment as a store owner, if given limitations on lifting and standing. Id. at 83-84. Dr. Kirsh found that Blachorsky only had "moderate limitations," id. at 106, and that he was capable of "light work" if provided limitations on lifting, walking and standing. Id. at 113-14. The ALJ found that these opinions were well supported and consistent with Blachorsky's other medical records and the findings of Dr. Healy. Id. at 31-32. However, the ALJ also found that, given more recent medical records related to Blachorsky's diabetic ulcers and cervical degenerative disc disease, that the opinions were only partially persuasive, and Blachorsky should be further limited from "light work" to "sedentary work." Id. at 32. The ALJ, in carrying out his duty to develop the record, was justified in relying on Dr. Chen's and Dr. Kirsch's findings in combination with other records.

Additionally, the ALJ's decision relied on a number of treatment notes from physicians who treated Blachorsky or consulted with him regarding his treatment from 2017 to late 2021. Id. at 28-30 (citing id. at 356, 421, 458-59, 464, 482-83, 493, 525, 544, 555, 574, 575-77, 614, 770-73). These records included: medical records from doctors affiliated with Columbia University who saw Blachorsky between 2017 and 2018, including MRI, CT scans, and X-ray reports, from December 2017 to November 2018 (id. at 351-419); "progress notes" from physicians at New York University from June 2015 to March 2021, related to the ongoing care of Blachorsky's kidney disease, knee pain, abdominal tear, and Crohn's disease, id. at 525-32, 534-37, 551-55 ("progress notes" from Jeffrey Michael, M.D. of NYU Nephrology Associates), id. at 532-33 ("progress notes" from Michael Alaia M.D. of CMC Orthopedics), id. at 544-51 ("progress notes" from Dr. Levine of NYU Plastic Surgery Associates), id. at 1028-67 ("visit summary" from Dr. Shannon Chang of NYU Gastroenterology); and records of Blachorsky's

repeated visits to Centerock Podiatry Associates for his plantar fasciitis and foot ulcers, from February 2020 to October 2021 (id. at 1275-1348). In total, the ALJ examined well over a thousand pages of medical records pertaining to Blachorsky's physical ailments. See id. at 521-769 (kidney disease, osteoarthrosis, abdominal wall construction) 770-76 (general consultation), 1215-16 (disc herniation), 1217-36 (maculopathy) 1275-1348 (foot ulcers), 1349-74 (joint swelling), 1375-97 (neck and back pain).

The ALJ also held a hearing on February 3, 2022, at which Blachorsky testified regarding his symptoms, limitations, and activities of daily living. Id. at 40-72. At the hearing, the ALJ questioned Blachorsky about his alleged impairments, symptoms, and work history. Id. at 49-62. And at the hearing, Plaintiff's counsel represented that the record was complete. See id. at 71; Mangual v. Comm'r of Soc. Sec., 600 F. Supp. 3d 313, 326 (S.D.N.Y. 2022) (concluding that there was no error in ALJ's development of the record based, in part, on representation from claimant's counsel that record was complete).

The only purported gaps Blachorsky points to in the medical records reviewed by the ALJ was that the record lacks medical opinions from any of Blachorsky's treating sources, and that Dr. Healy's April 12, 2021 opinion was stale because a number of medical records indicated a worsening in Blachorsky's condition following that evaluation. Pl.'s Br. at 19. First, and contrary to Blachorsky's argument, the lack of specific medical opinions from Blachorsky's treating physicians does not require a remand here, because the medical records contain no obvious gaps. Where there are no obvious gaps in the record, the ALJ's duty to develop the record does not require them to seek out medical opinions. See Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013) (explaining that ALJ's failure to request medical source opinions is not *per se* a basis for remand where "the record contains sufficient evidence from

which an ALJ can assess the petitioner's residual functional capacity"); Brian Z. v. Comm'r of

Soc. Sec., No. 20-CV-737, 2021 WL 3552525, at *9-10 (N.D.N.Y. Aug. 11, 2021) (finding that

the ALJ was not required to contact treating sources for medical source statement where medical

records and persuasive opinion evidence provided substantial evidence for RFC determination).

As discussed, the ALJ reviewed the reports of the consultative examiners, Blachorsky's

testimony and activities of daily living, and treatment notes for Blachorsky from 2017 to 2021.

Blachorsky's argument that Dr. Healy's opinion was "stale" fares no better. As an initial

matter, Blachorsky's medical records after April 12, 2021 were reviewed by the ALJ, as is

evident from the fact that the ALJ's RFC determination explicitly considered records generated

subsequent to Dr. Healy's opinion related to Blachorsky's Crohn's disease and cervical

degenerative disc disease. R. at 31-32. In any case, and contrary to Blachorsky's argument, the

medical records after Dr. Healy's examination do not show deterioration or any new condition

significant enough to render Dr. Healy's opinion stale. See Santiago v. Comm'r of Soc. Sec., No.

19-CV-2051 (KHP), 2020 WL 1922363, at *6 (S.D.N.Y. Apr. 21, 2020). Blachorsky points to

issues with his abdominal wall and foot ulcers that arose after Dr. Healy's evaluation. Pl's Br. at

19 (citing R. at 1300, 1308). Yet, as of September 15, 2021, Blachorsky's podiatrist noted that

Blachorsky's foot ulcer was "improving" and his pain was "occasional." Id. at 1322. On October

6, 2021, an MRI showed that Blachorsky's abdominal wall was "stable" and showed no

"evidence of focal fluid collection or fistula." Id. at 1360.

Nor do the medical records show a new impairment following Dr. Healy's April 2021

examination. Although Blachorsky points to a "possible chronic facet facture" as of June 10,

2021, Pl's Br. at 19 (citing R. at 1214), a June 21, 2021 examination revealed "no evidence of

fracture." Id. at 1215. Additionally, Dr. Kirsch's evaluation, dated August 27, 2021, included a

review of medical records generated after Dr. Healy's April 2021 examination, and Dr. Kirsch still found that Blachorsky was capable of performing "light work." Id. at 113. In short, the record before the ALJ does not show a worsening of Blachorsky's condition significant enough to render Dr. Healy's opinion stale. See Marrero v. Comm'r of Soc. Sec., No. 20-CV-10241 (KHP), 2022 WL 3355266, at *6 (S.D.N.Y. Aug. 15, 2022) (finding that ALJ did not fail to develop the record in relying on the existing opinion evidence and administrative medical findings where the medical opinion was consistent with the record as a whole and "Plaintiff has not identified any evidence indicating she suffered other significant impairments or a new condition that would have led to greater restrictions regarding her RFC"); Starr v. Comm'r of Soc. Sec., 581 F. Supp. 3d 525, 531 (S.D.N.Y. Jan. 26, 2022) (concluding that record did not indicate a deterioration in Plaintiff's condition so substantial as to render the records on which ALJ relied incomplete or insufficient).

In sum, "there are no obvious gaps in the administrative record," and the ALJ "possesse[d] a complete medical history." Cortese v. Comm'r. of Soc. Sec., No. 16-CV-4217 (RJS), 2017 WL 4311133, at *4 (S.D.N.Y. Sept. 27, 2017) (quoting Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999)) (internal quotation marks omitted). The ALJ was therefore under no obligation to seek additional information. See Hutchings v. Berryhill, No. 18-CV-1921 (PAE) (KHP), 2019 WL 5722478, at *9 (S.D.N.Y. June 28, 2019), report and recommendation adopted by, 2019 WL 5722009 (S.D.N.Y. July 16, 2019) (concluding that where ALJ reviewed records from a variety of treating sources, reviewed plaintiff's hearing testimony, and no obvious gaps were apparent, the ALJ did not fail in obligation to develop the record); Regino v. Comm'r of Soc. Sec., No. 20-CV-8518 (RA) (BCM), 2022 WL 4369919, at *13 (S.D.N.Y. Aug. 31, 2022), report and recommendation adopted by, 2022 WL 4368187 (S.D.N.Y. Sept. 21, 2022) (finding

that the administrative record concerning plaintiff's mental impairments was sufficiently developed where it included years of detailed treating notes and opinion evidence from a consultative examiner).

    2.   <u>Substantial evidence supports the ALJ's RFC determination.</u>

       The ALJ found that Blachorsky's physical impairments imposed significant restrictions but did not prevent him from performing sedentary work with postural and foot control limitations. R. at 31. The ALJ found that such postural and foot control limitations would address Blachorsky's conditions of cervical spine and diabetic ulcers. <u>Id.</u> The ALJ further found that Blachorsky's vision issues, which were improved with glasses, and his fatigue relating to chronic kidney disease, precluded him from working at unprotected heights. <u>Id.</u> Last, the ALJ found that Blachorsky's Crohn's disease is "largely controlled with medication and during a period of worsening symptoms" can be accommodated by allowing ready access to a bathroom for 5% of the workday, in addition to regularly scheduled breaks of 15 minutes in the morning and afternoon, and a half hour to hour break midday. <u>Id.</u> at 27. The ALJ's determination is supported by substantial evidence and the medical record indicates that the ALJ adequately accounted for each of Blachorsky's impairments.

       First, as discussed above, the ALJ's determination was supported by the opinions of Dr. Healy, a consultative examiner, and two non-examining consultative physicians, Dr. Kirsch and Dr. Chen. Dr. Healy found that Blachorsky had only "moderate" limitations, and Dr. Kirsch and Dr. Chen both found that he was capable of "light work" with appropriate limitations. <u>See</u> <u>id.</u> at 83, 113, 773. The ALJ found that Dr. Chen's and Dr. Kirsch's opinions that Blachorsky could perform light work were "consistent with [Blachorsky's] largely conservative course of treatment; clinical examination findings;" and Dr. Healy's findings. <u>Id.</u> at 31. As to Dr. Healy, the ALJ found his opinion that Blachorsky could perform moderate work only "partially

persuasive," because Dr. Healy's examination indicated that Blachorsky had "reduced strength," and other medical records showed that Blachorsky had ulcers. Id. at 32. Despite the opinions of the consultative examiners, the ALJ nevertheless determined that Blachorsky's impairments limited him to sedentary work because he considered "recent records" that showed Blachorsky's diabetic ulcers and "cervical impairment." Id. at 31. On their own, these supporting "opinions of consultative examiners and [] non-examining consultative physicians can constitute substantial evidence in support of the ALJ's decision." Edwards v. Comm'r of Soc. Sec., No. 22-CV-4345 (RWL), 2023 WL 6173526, at *15 (S.D.N.Y. Sept. 22, 2023). And here, the ALJ rejected those opinions and crafted an RFC that was far more restrictive than the medical opinions found necessary. See, e.g., Benitez v. Comm'r of Soc. Sec., No. 23-CV-7087 (KHP), 2024 WL 2193827, at *11 (S.D.N.Y. May 15, 2024) (finding ALJ's decision was supported by substantial evidence where ALJ found claimant's impairments "were more severe than these medical opinions suggested and tailored the RFC based on the record as a whole").

Second, the ALJ examined the record as a whole and adequately accounted for all of Blachorsky's impairments in the RFC determination. The ALJ determined that Blachorsky's foot ulcers did not prevent him from engaging in sedentary work with certain postural and foot control limitations. R. at 27. This finding was supported by podiatry treatment records between December 2020 and November 2021, which showed that the ulcers caused pain but improved with continued treatment. Id. at 30 (citing id. at 1282, 1293, 1299). For example, from December 2, 2020, to June 17, 2021, Blachorsky's ulcers were improving with treatment. Id. at 1287, 1308. Even when Blachorsky developed a new foot ulcer in September 2021, it improved with only "occasional" pain by November 4, 2021. Id. at 30 (citing id. at 1325). To account for Blachorsky's foot ulcers, the ALJ required that he avoid standing or walking. See Byrd v.

Kijakazi, No. 20-CV-4464 (JPO) (SLC), 2021 WL 5828021, at *21 (S.D.N.Y. Nov. 21, 2021),

report and recommendation adopted by, 2021 WL 5827636 (S.D.N.Y. Dec. 7, 2021) ("The ALJ

also accounted for the continuing limitations resulting from [plaintiff's] foot ulcers by

incorporating into the RFC a reduction in the number of hours [he] can sit or stand during the

workday.").

  The ALJ also appropriately accounted for Blachorsky's Crohn's disease by allowing for

sedentary work with regular breaks and bathroom visits for 5% of the day. R. at 27. The ALJ

determined that Blachorsky's Crohn's disease was "largely controlled with medication." Id. at

31. The medical records support this finding. For example, as of July 7, 2021, Dr. Jeffrey

Michael of NYU Nephrology Associates, who treated Blachorsky for several years, noted that

his Crohn's disease had been "relatively quiescent" since 2001. Id. at 1166. Furthermore, other

medical records show that medication alleviated Blachorsky's symptoms. In August of 2018,

Blachorsky began regular Stelara injections to address his Crohn's symptoms. Id. at 576. By July

10, 2019, Dr. Mitchell Bernstein, a colorectal surgeon, noted that Stelara have given Blachorsky

"good control of the disease." Id. at 570. On September 30, 2019, progress notes from Dr. Marty

Wolff, a gastroenterologist, stated that Blachorsky presented with "no active bowel

inflammation." Id. at 1043. On June 6, 2021, Dr. Wolff again noted that Stelara allowed

Blachorsky to live with "no breakthrough symptoms" and "no abdominal pain" for five of the six

weeks between injections, with symptoms only reoccurring during the sixth week. Id. at 1040.

On June 16, 2021, Dr. Shannon Chang, a gastroenterologist whom Blachorsky was referred to

for an evaluation, did not recommend any changes for the treatment of Blachorsky's Crohn's

disease, recommending only that he continue the Stelara injections. Id. at 1047.

Consistent with the medical records showing that his disease was well managed with medication, Blachorsky, at his April 2021 consultation with Dr. Healy, admitted that his treatment with Stelara had been "very helpful" to his condition. Id. at 770. Likewise, Blachorsky told the ALJ during the hearing that the symptoms of his Crohn's disease were "controlled." Id. at 58. In short, treatment records and Blachorsky's own hearing testimony support the ALJ's determination that Blachorsky could perform sedentary work if given certain breaks during the workday to account for his Crohn's disease during symptomatic periods. See Pena v. Comm'r of Soc. Sec., No. 20-CV-7897 (AJN) (SLC), 2021 WL 6754958, at *15-16 (S.D.N.Y. Dec. 29, 2021), report and recommendation adopted by, 2022 WL 280890 (S.D.N.Y. Jan. 31, 2022) (finding that ALJ's determination that a claimant with Crohn's disease could maintain employment while being off-task for 5% of the workday was supported by substantial evidence).

The ALJ also adequately considered Blachorsky's abdominal tear in the RFC determination and the record supports that the tear did not prevent Blachorsky from engaging in sedentary work. The ALJ noted that on March 2, 2020, Blachorsky "had a consultation regarding abdominal wall reconstruction." R. at 29 (citing id. at 544-45). The ALJ referred to Blachorsky's March 2, 2020 consultation with Dr. Jamie Levine, an NYU plastic surgeon, regarding the possibility of an abdominal wall reconstruction. Id. at 544. The "progress notes" from this consultation indicate that, although Blachorsky was interested in the reconstruction and experienced "occasional drainage" from the tear, Dr. Levine found him "stable overall." Id. at 544-45. The medical records further support a conclusion that the abdominal tear was stable and had not worsened over time. On June 16, 2021, Dr. Shannon Chang, a gastroenterologist, noted that the lower abdominal wound was "enlarging in size," but only recommended additional testing and a further consultation regarding its repair after Blachorsky "optimizes his weight." Id.

at 1047. On October 5, 2021, an MRI found that Blachorsky's tear was a "stable curvilinear enhancement . . . without evidence of focal fluid collection or fistula" and that he had "no evidence of active inflammatory bowel disease" and a "stable hernia." Id. at 1360. Last, Dr. Healy, Dr. Chen, and Dr. Kirsh all determined that the abdominal tear did not prevent Blachorsky from performing light work. Id. at 83, 113, 773. Collectively, these records support the ALJ's finding that the abdominal tear did not prevent Blachorsky from engaging in sedentary work. See Byrd, 2021 WL 5828021, at *21 (affirming the ALJ's finding that claimant was capable of sedentary work where the ALJ's decision was supported by medical evidence, opinions of consultative examiners, and the claimant's course of treatment).

The ALJ also appropriately considered Blachorsky's obesity in finding that he could not handle the "standing/walking of light work," and should be limited to sedentary work. R. at 25, 32. As the ALJ noted, Blachorsky was "independent with personal care," was able to drive, could shop at the supermarket, could engage in light cleaning, and prepared his own meals. Id. at 31. The ALJ also examined treatment records which described Blachorsky's gait as normal and indicated that he had a full and active range of motion. Id. at 30 (citing id. at 1381). In March 2020, Blachorsky was able to walk for up to 15 minutes and could climb two flights of stairs. Id. at 538. As Dr. Healy noted, Blachorsky's walk indicated that he was "in no severe distress" due to his weight because his gait was only "slightly widened." Id. at 771. Additionally, notes from a June 12, 2019 "comprehensive physical examination" performed by Dr. Michael Alaia, along with notes from a November 1, 2021 physical examination by Dr. Krupali Chokshi, indicated that Blachorsky had 5/5 motor strength in his hips and hands. Id. at 574, 1381. Last, Dr. Healy, Dr. Chen, and Dr. Kirsh all found that, despite his obesity, Blachorsky remained mobile enough to retain gainful employment. See id. at 82, 112 (stating that Blachorsky could "occasionally"

climb ladders or ramps), 771 (stating that Blachorsky's gait was only "slightly widened" and he could "rise from [a] chair without difficulty"). The overall record evidence thus supported the ALJ's finding that Blachorsky's obesity did not limit his physical functioning to the extent of preventing him from performing sedentary work. See Rios v. Kijakazi, No. 20-CV-4369 (KMK) (AEK), 2022 WL 3928565, at *9 (S.D.N.Y. Aug. 8, 2022), report and recommendation adopted by, 2022 WL 3927889 (Aug. 31, 2022) (upholding the ALJ's RFC determination that "obesity had not limited [plaintiff's] physical functioning" where medical records showed that plaintiff had "normal gait" and normal motor exams); Browne v. Comm'r of Soc. Sec., 131 F. Supp. 3d 89, 102 (S.D.N.Y. 2015) (concluding that the ALJ's determination as to the effects of claimant's obesity were supported by substantial evidence where claimant's medical records and the records of the consultative examiner did not refer to claimant's obesity as affecting his functioning); see also Drake v. Astrue, 443 F. App'x 653, 657 (2d Cir. 2011) ("[T]he ALJ implicitly factored [claimant's] obesity into his RFC determination by relying on medical reports that repeatedly noted [claimant's] obesity and provided an overall assessment of [claimant's] work-related limitations.").

Additionally, the ALJ's decision to discount Blachorsky's testimony as to the severity of his symptoms was supported by substantial evidence. At his administrative hearing, Blachorsky testified that his neck pain kept him sedentary "for a good part of the day," his foot infection prevented him from walking, and his Crohn's disease generally prevented him from engaging in daily activities. R. at 63. However, the ALJ found that Blachorsky's "allegations of debilitating symptoms [were] not wholly consistent with the objective evidence of record," and provided specific reasons for this determination. Id. at 31.

The ALJ noted that Blachorsky's testimony was inconsistent with Blachorsky's own statements about his daily activities, which included light cleaning, meal preparation, and driving. Id. Evidence that a claimant engages in "activities of daily living" constitutes a basis for finding their testimony not credible. Ortiz v. Comm'r of Soc. Sec., 309 F. Supp. 3d 189, 201 (S.D.N.Y. 2018) (finding that ALJ's determination regarding credibility of plaintiff's testimony was supported by substantial evidence where ALJ noted that plaintiff testified that he performed grocery shopping and "occasionally cooked, cleaned, dusted and did housework"). Further, the ALJ noted that Blachorsky's subjective statements were inconsistent with the "routine and/or conservative" nature of his treatment. R. at 31. The records indicate that Blachorsky's impairments could be, and were, treated with regular medication and consultations with professionals, rather than more aggressive interventions such as surgery. Furthermore, these records show that this conservative line of treatment was effective. For example, Blachorsky testified that his cortisone injections for his knee pain helped prevent pain for a period of months. Id. at 56. The symptoms of his Crohn's disease were well managed with Stelara injections. Id. at 528. In June 2021, a gastroenterologist recommended that Blachorsky simply continue this line of treatment. Id. Similarly, the records concerning the treatment of Blachorsky's ulcers display a number of routine treatments, such as "local wound care." Id. at 1303. Blachorsky's general "conservative treatment regimen," combined with other evidence in the record, provides substantial evidence "sufficient to discount a claimant's statements about the severity of their symptoms." Thomas v. Comm'r of Soc. Sec., 479 F. Supp. 3d 66, 89 (S.D.N.Y. 2020); see Guerrero v. Colvin, No. 16-CV-3290 (RJS) (AJP), 2016 WL 7339114, at *16 (S.D.N.Y. Dec. 19, 2016), report and recommendation adopted by, 2017 WL 4084051 (S.D.N.Y. Sept. 13, 2017)

(the ALJ appropriately discounted claimant's testimony where "testimony regarding the severity of [claimant's] symptoms conflicted with her conservative courses of treatment").

Medical records further supported the ALJ's decision to discount Blachorsky's testimony about the extent of his symptoms. A number of records showed that Blachorsky retained his mobility, despite his testimony suggesting otherwise. On June 16, 2021, Dr. Chang performed a physical examination of Blachorsky and found his gait was "normal." R. at 1352. As of November 1, 2021, Dr. Chokshi noted that Blachorsky's gait was "normal" with a full range of motion. Id. at 1381.

Likewise, although Blachorsky testified that his neck pain incapacitated him, id. at 59-60, as of May 1, 2019, Dr. Robin S. Kim of Good Samaritan Hospital found that Blachorsky exhibited a "normal range of motion" in his neck. Id. at 427. On January 21, 2021, Dr. Anna Chemov, an endocrinologist, noted that Blachorsky's neck was "supple" and his thyroid was "not enlarged." Id. at 485. Similarly, Dr. Chokshi evaluated Blachorsky for neck pain on September 3, 2021, and also found that Blachorsky's neck was "supple" and that any pain could be treated with physical therapy. Id. at 1394. Dr. Healy also found that Blachorsky's neck was "supple" with "no masses" during the consultative examination in April 2021. Id. at 772.

Last, Blachorsky's testimony as to the limitations imposed by his Crohn's disease was inconsistent with myriad treatment notes. Dr. Wolff, a gastroenterologist, stated that Blachorsky lived with "no breakthrough symptoms" and "no abdominal pain" for five of the six weeks between injections, with symptoms only reoccurring during the sixth week. Id. at 1043. Blachorsky himself also testified that his Crohn's disease was "controlled." Id. at 58. Ample medical evidence in the record supported the ALJ's decision to discount Blachorsky's testimony as it concerned his symptoms from the Crohn's disease. Edwards, 2023 WL 6173526, at *20-21

(finding that ALJ was justified in discounting claimant's own testimony about his limitations where they were inconsistent with the medical record); Clark v. Saul, 444 F. Supp. 3d 607, 624 (S.D.N.Y. 2020) (same); Morales v. Berryhill, 484 F. Supp. 3d 130, 150-51 (S.D.N.Y. 2020) (finding that ALJ lent proper weight to claimant's testimony where testimony was repeatedly contradicted by a number of medical records and, to the extent claimant had some limitations, these were factored into the ALJ's RFC determination).

Blachorsky raises various challenges to the ALJ's RFC determination, none of which has merit. First, Blachorsky argues that the ALJ did not properly consider his Crohn's disease in formulating the RFC, because he contends that there is no medical evidence demonstrating that he only needs to be "off-task" for bathroom use for only 5% of the workday. Pl.'s Br. at 22-23. Blachorsky testified that he experiences "some pain and going to the bathroom more frequently" when the Stelara injections start to wear off around the fifth week. R. at 58. Blachorsky also testified that when his Crohn's disease "act[s] up," it becomes hard to leave the home. Id. at 63. However, as discussed, the ALJ's decision to not credit this testimony was reasonable and supported by substantial evidence. Blachorsky's gastroenterologist found that the Stelara injections generally allowed Blachorsky to live with "no breakthrough symptoms" for five of six weeks between injections, id. at 1043, and another gastroenterologist concluded that Blachorsky should continue this conservative course of treatment. Id. at 1047. Dr. Healy found that Blachorsky's Crohn's disease only caused him to have "moderate limitations." Id. at 773. Furthermore, contrary to Blachorsky's argument, "[t]he fact that the ALJ's RFC determination does not correspond to a specific medical opinion is not of issue." Gordon v. Comm'r of Soc. Sec., No. 22-CV-4683, 2023 WL 5725429, at *8 (S.D.N.Y. Aug. 18, 2023), report and recommendation adopted by, 2023 WL 5723073 (S.D.N.Y. Sept. 5, 2023). Where, as here, a

claimant's statements concerning the intensity, persistence, and limiting effects of their symptoms are not entirely consistent with the medical evidence and other evidence in the record, the ALJ was justified in weighing all of the available evidence, including medical records, to make an RFC finding that was consistent with the record as a whole. Id.

Second, Blachorsky contends that the ALJ failed to consider the effects of his foot ulcers, open abdominal wounds, and obesity in crafting the RFC. Pl.'s Br. at 23. But as is evident from the ALJ's decision, the ALJ considered all of these ailments. The ALJ discussed Blachorsky's podiatry treatment records and cited to medical records which indicated that Blachorsky's symptoms improved over time although they still caused occasional pain. R. at 30 (citing id. at 1299). The ALJ also considered Blachorsky's abdominal tear, noting Blachorsky's March 2, 2020 consultation with Dr. Levine regarding an abdominal wall reconstruction surgery. Id. at 29 (citing id. at 544-45). The medical records, however, indicated that the tear was "stable overall" and "not painful." Id. at 540, 544-45. Last, the ALJ considered Blachorsky's obesity, citing to medical records which indicated that Blachorsky did not have an abnormal gait and was not unduly limited by his obesity. Id. at 29 (citing id. at 494). See Mancuso v. Astrue, 361 F. App'x 176, 178 (2d Cir. 2010) (finding that ALJ did not err in their consideration of obesity where "there [was] no factual basis for thinking that 'any additional and cumulative effects of obesity' limited [the claimant's] ability to perform light work") (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00Q).

Finally, Blachorsky argues that the ALJ failed to properly weigh his testimony as to the severity of his symptoms. Pl.'s Br. at 27. "An ALJ is not required to accept the claimant's subjective complaints without question" and may "exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Marrero, 2024 WL

1435923, at *14 (quoting Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010)). As the ALJ

explained, Blachorsky's subjective statements were inconsistent with Blachorsky's own daily

activities and the conservative course of treatment for his various illnesses. R. at 31. Further, the

ALJ pointed to specific medical evidence which contradicted Blachorsky's testimony. See supra

at 27-28; see also Martes v. Comm'r of Soc Sec., 344 F. Supp. 3d 750, 763 (S.D.N.Y. 2018)

("[A]n ALJ is 'not required to accept the claimant's subjective complaints without question; he

may exercise discretion in weighing the credibility of the claimant's testimony in light of the

other evidence in the record.'") (quoting Barry v. Colvin, 606 F. App'x 621, 622 (2d Cir. 2015));

Edwards, 2023 WL 617352, at *20-21 (accord).

　　　In sum, the ALJ reasonably assessed the evidence and reached an RFC determination that

is supported by substantial evidence.

## **CONCLUSION**

　　　For the foregoing reasons, Blachorsky's motion for judgment on the pleadings is

**DENIED** and the determination of the Commissioner is **AFFIRMED.**


**SO ORDERED.**

DATED:　　　New York, New York
　　　　　　　September 11, 2024



_____
VALERIE FIGUEREDO
United States Magistrate Judge

31